# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

*IN RE:* APPLICATION OF VALITUS, LTD.      CIVIL ACTION NO. 20-mc-91133-FDS
FOR AN ORDER TO TAKE DISCOVERY
PURSUANT TO 28 U.S.C. § 1782

### MEMORANDUM AND ORDER
### ON MOTION TO COMPEL BAIN CAPITAL HOLDINGS (GP), LLC
### TO COMPLY WITH SUPOENA (#15).

KELLEY, U.S.M.J.

## I. Introduction.

This is a motion to compel compliance with a subpoena issued pursuant to 28 U.S.C. § 1782. (#15.) Section 1782 allows litigants in foreign proceedings to obtain evidence from entities who reside or who are found in the United States for use in the foreign tribunal. 28 U.S.C. § 1782(a).

On March 11, 2020, petitioner, Valitus, Ltd. (Valitus),[1] filed an application under 28 U.S.C. § 1782 to issue the following:

> (1) a subpoena to Bain Capital Holdings (GP), LLC . . . , requiring it to produce documents in its possession, custody[,] or control for use in a civil lawsuit pending in Nantes, France . . . ; and

> (2) a Rule 30(b)(6) deposition subpoena requiring [Bain Capital Holdings (GP), LLC] to make available a corporate designee who is prepared to testify under oath about information known or reasonably available to [it] concerning the facts in dispute in the [f]oreign [p]roceeding, together with the nature, extent[,] and location of such documents.

---

[1] Valitus is a company registered in the United Kingdom, which resells value products to international bulk buyers. (#17-1 at 61; #17-3 at 6.) It markets itself "as the UK's leading service exporter of branded excess stock." (#17-1 at 61.)

(#1 at 1.) Valitus is one of two plaintiffs in a foreign proceeding in Nantes, France (the foreign proceeding or the Nantes proceeding), which "stems from a dispute over the condition of a large consignment of furniture goods sold to Valitus by [defendant,] Maisons du Monde [(Maisons)], which goods Valitus maintains were damaged at the time of delivery." *Id.* at 3. In addition to Maisons, Valitus brought damages claims against defendants, Bain Capital Ltd. (Bain UK), and Bain Capital Private Equity (Europe), LLP (Bain Europe) (collectively, Bain). *Id.*[2]

Bain Capital Holdings (GP), LLC (BCH), which is not a party to the proceeding, is an affiliate of Bain UK and Bain Europe, and resides within the District of Massachusetts for purposes of § 1782. *Id* at 2–3; *see* Secretary of the Commonwealth – Corporations Division, https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=J3AglvTBUKy LeH1wdW5QOEzfcj8r.jnOztNy511av2A- (last visited Oct. 27, 2020).[3] Valitus contends that BCH "has, in its direct possession and/or within its control . . . , emails and other documents relevant to

---

[2] According to the record complaint, Maisons markets itself as "a creator of original universes in the field of home furnishing, offering a unique range of decoration items and furniture, at affordable prices with a variety of styles and themes." (#17-1 at 62.) As of December 31, 2017, it operated 313 stores across Europe, in Spain, Belgium, Italy, Luxembourg, Germany, and Switzerland, as well as the United Kingdom and several other European countries. *Id.* Bain UK is a company organized and domiciled in the United Kingdom, which formerly provided investment advice regarding portfolios in Europe. (#22-1 at 1.) Bain Europe, one of Bain's European affiliates, is a limited liability partnership that provides investment advice regarding investment portfolios in Europe today. *Id.* BCH indicated in its memorandum in opposition that Maisons had been "owned in part by funds managed by [Bain Europe,] and certain personnel from a [Bain Europe] affiliate at [the] time [of the alleged breach] provided services to Maisons . . . pursuant to a services agreement." (#22 at 1.)

[3] According to the declaration filed by the deputy general counsel of Bain Capital, LP in Boston, BCH is the owner of Bain Capital Holdings (GP II), LLC, a general partner of Bain Capital Holdings, LP. (#22-1 at 1.) Bain Capital Holdings, LP is the holding company that directly and indirectly owns Bain Capital, LP. *Id.* In turn, Bain Capital, LP owns Bain UK, and Bain UK is one of two corporate members of Bain Europe. *Id.*

the issues in the [f]oreign [p]roceeding, namely whether the goods [sold to Valitus] were delivered in the agreed[-upon] condition." (#1 at 3.)

On March 25, 2020, the court entered an order granting Valitus' application, and the subpoena was issued. (#14.) On July 15, 2020, Valitus filed the present motion to compel BCH to comply with the subpoena, pursuant to Federal Rule of Civil Procedure 37. (#15.) Valitus' motion details the following procedural history:

> On April 20, 2020, [BCH], through counsel, served a letter objecting to the subpoena. On May 5, 15[,] and 27, 2020, counsel for Valitus conferred by telephone conference call with counsel for [BCH] regarding [BCH's] objections to the subpoena. By letter dated May 28, 2020, [BCH], through counsel, informed [Valitus'] counsel that [BCH] "declines any production in response to the [s]ubpoena."
>
> A discovery conference pursuant to Local Rule 37.1 was held on June 23, 2020. Following the discovery conference, counsel for Valitus provided additional case authority to counsel for [BCH]. [BCH] continues to decline to produce any documents in response to the subpoena.

*Id.* at 1. The motion has been fully briefed. (##16, 17, 22, 25.)

Valitus' motion is granted to the extent that it seeks relevant document production from BCH and the parties comply with the EU General Data Production Regulation, referenced *infra.* To the extent that Valitus seeks Rule 30(b)(6) deposition testimony, Valitus' motion is denied, without prejudice.

## II.  Statement of Facts.

In 2019, Valitus and Forum Exporters International, Ltd. (Forum Exporters), which is not a party to the present motion, filed a breach of contract action against Maisons, Bain UK, and Bain Europe in the Commercial Court of Nantes (France). (#17-1 at 57–110.)[4] The complaint alleges

---

[4] The summons in the Nantes proceeding lists Bain Europe and Maisons as the defendants, and the complaint refers to "Bain Capital" and Maisons as the defendants. *See* #17-1 at 57–110. However, Valitus and BCH do not dispute that Maisons, Bain UK, and Bain Europe are the proper parties in

that in 2015, Bain, then a major shareholder of Maisons, approached Valitus with an offer to sell 29,313 large items of Maisons' overstock, along with 203,606 small items (collectively, the goods), for a total price of €187,500. *Id.* at 59. This low sale price was conditioned on Valitus' agreement to resell the goods outside of the European Union, which was part of Maisons' distribution network, and "pay the related transportation costs and customs duties[.]" *Id.* Valitus agreed to sell the goods in South Africa by way of a parallel agreement with Forum Exporters. *Id.*[5]

According to the complaint, between September and December 2015, Valitus negotiated with Bain, rather than Maisons, regarding the parties' proposed sales agreement. *Id.* at 63. Valitus maintains in a pre-litigation letter to Bain, that, on September 10, 2015, John Merrick, of an entity called "Ideal Solutions Ltd.," sent an email to Henri Dana of Valitus, introducing Dana to Bruno Vanhoorickx, a senior vice president of Bain. (#17-3 at 2.)[6] Vanhoorickx followed up with a separate email the next day, introducing Maisons as one of Bain's portfolio companies. *Id.* Vanhoorickx's email indicated that Bain was looking to sell various goods on behalf of Maisons and stated: "Attached you can find an overview of the products we are currently looking to sell (i.e., stock surplus/end of line) . . . . All products are stored in Marseille, and are still wrapped/boxed (so can easily be put in containers) . . . ." *Id.*

---

the Nantes proceeding. According to the complaint, Forum Exporters "is a South African company specializ[ing] in the sale of inventory." *Id.* at 61.

[5] Under the parallel agreement, Valitus and Forum Exporters were to split the cost of the purchase and the transport of the goods to South Africa, and the profits from the resale of the goods. (#17-1 at 59.)

[6] According to BCH, Vanhoorickx was actually employed with an entity called Portfolio Company Advisors (Europe), LLP (PCAE), which is owned in part by Bain. (#22-1 at 2.) Vanhoorickx left his employment with PCAE in December 2019. *Id.*

In November 2015, Vanhoorickx accompanied Dana and Eli Bourmad, also of Valitus, to one of Maisons' warehouses located in Arles, France, so that Dana and Bourmad could inspect the goods Maisons was proposing to sell, before entering into the sales agreement. *Id.* Valitus alleges that Vanhoorickx showed Dana and Bourmad a 10% sample of the goods, orally confirming "that the rest of the goods were in the same good condition." (#17-1 at 64.)[7] Valitus indicates in its subpoena that the manager of the warehouse in Arles was eventually terminated. (#1-2 at 11.)

Valitus signed the sales contract with Maisons on December 7, 2015, and paid the agreed-upon purchase price for the goods on December 9, 2015, and January 15, 2016. (#17-1 at 65.) It is Valitus' position that Bain, through Vanhoorickx, induced it into entering into the sales agreement with Maisons. (#17-3 at 5.)

Between March 2016 and June 2016, the goods were transported to Forum Exporters in South Africa in eleven different shipments, consisting of approximately 184 containers of goods. (#17-1 at 67–68.) While Valitus packed and loaded the first two shipments, consisting of approximately 20 containers, all of which arrived in South Africa in good condition, Maisons allegedly refused to permit Valitus to pack and load, or to supervise the packing and loading of, the remaining nine shipments, which consisted of approximately 145 containers. *Id.* at 67–69. Forum Exporters opened the first 89 of these 145 containers and found that the goods inside were either damaged, did not conform to the attached packing lists, or did not match the description of the goods Vanhoorickx had promised. *Id.* at 69–70. Forum Exporters rejected the remaining 56

---

[7] Valitus states in its pre-litigation letter that Dana had been granted permission "to film a short video of the goods." (#17-3 at 2.) The video allegedly captured a conversation between the three executives, where Vanhoorickx confirmed that the goods he was showing Dana and Bourmad were a "[v]ery representative 10%." *Id.*

containers, which remained unopened, and Valitus routed the containers back to Europe. *Id.* at 67–68, 70; *see also* #17-3 at 3–4.

In August 2016, Forum Exporters wrote directly to Bain, enclosing photos of the damaged goods, taken on July 29, 2016. (#17-1 at 70.) Vanhoorickx then allegedly asked Paul Marchand, another Bain employee,[8] to travel to South Africa to evaluate the condition of the damaged goods in the containers Forum Exporters had already opened. *Id.*; *see* #17-3 at 3. Valitus maintains that Marchand was able to inspect the goods, "ascertain the damage[,] and take many photos of the goods." (#17-1 at 70.) However, the results of Marchand's inspection were never communicated to Valitus or Forum Exporters. *Id.*

In November 2016, Valitus invited Bain and Maisons to inspect the previously unopened containers of returned goods it received from Forum Exporters, but both Bain and Maisons allegedly refused. *Id.* at 70–71. Valitus also invited SGS, an "internationally renowned" valuation company, to assess the quality of the returned goods. *Id.* at 71. According to the complaint, SGS concluded that the "[c]ontainers were carelessly packed," and the majority of the goods were "mostly damaged[.]" *Id.* Therefore, "Valitus incurred a considerable loss comprised of, among other losses, the price paid for the goods, shipping costs, import/export duties, storage fees, internal transport, sorting/handling, demurrage, penalties, interest[,] and legal advice." (#17-3 at 4.)

Valitus and Forum Exporters seek damages from Maisons, Bain UK, and Bain Europe in the Nantes proceeding. (#17-1 at 60.) They also seek declaratory judgments that Maisons failed to deliver the goods in conformity with what it had promised, that Bain had "guaranteed the execution

---

[8] BCH contends that, like Vanhoorickx, Marchand was actually employed with PCAE, which is owned in part by Bain. (#22-1 at 2.) Marchand also left his employment with PCAE in December 2019. *Id.*

and proper performance of the contract by" Maisons, and that these failures caused their harms. *Id.* at 100.

In this motion to compel, Valitus seeks "documents regarding the negotiation, sale, packing, delivery, damage[,] and inspection of [the] goods" at issue during its approximately one-year relationship with Bain and Maisons. (#16 at 3.) The subpoena lists thirteen categories of documents: "(1) agreements and communications concerning the [g]oods"; "(2) treatment of the [g]oods prior to and in transit"; "(3) the actual condition of the [g]oods at various relevant stages of the transaction"; and "(4) the knowledge and/or intent" of Maisons and/or Bain UK. *Id.* at 7.[9]

_____

[9] Specifically, the subpoena seeks the following documents:

1. All [d]ocuments relating to the basis for Mr. Vanhoorickx's representation that the [p]urchased [g]oods were all of the same quality and description as the goods inspected in the warehouse in November 2015.

2. All [d]ocuments relating to any inspection of the [p]urchased [g]oods, prior to their shipment to Valitus, by any person acting for the [s]eller.

3. All [d]ocuments relating to any inspection of the [p]urchased [g]oods, prior to their shipment to Valitus, by Mr. Vanhoorickx.

4. All [d]ocuments relating to the condition of the purchased goods prior to delivery and at the time of delivery.

5. All [d]ocuments constituting communications (i.e., emails, correspondence[,] and text messages) relating to the purchased goods, including without limitation their condition prior to and at the time of delivery.

6. All [d]ocuments constituting communications (i.e., emails, correspondence[,] and text messages) between the [s]eller and Mr. Vanhoorickx relating to the purchased goods, including without limitation their condition prior to delivery and at the time of delivery.

7. All [d]ocuments relating to the report by Paul Marchand detailing the condition of the purchased goods at the time of delivery, including without limitation the report itself, any annexes, photographs[,] or notes relating to the report, and any communications concerning or related to the report.

Valitus concedes that its requested Rule 30(b)(6) subpoena "seeks only information concerning the nature, extent[,] and existence of the documents listed in" its subpoena for documents. *Id.* at 10.[10]

### III. Legal Analysis.

A. Valitus is entitled to the documents it seeks from BCH pursuant to 28 U.S.C. § 1782(a).

---

8. All [d]ocuments constituting communications . . . (i.e., emails, correspondence[,] and text messages) in which the report by Paul Marchand detailing the condition of the purchased goods at the time of delivery, including without limitation the report itself[,] any annexes, photographs[,] and notes relating to the report, [was] transmitted to the [s]eller.

9. All [d]ocuments relating to the answers received by the [s]eller when it received the report by Paul Marchand detailing the condition of the purchased goods at the time of delivery, including without limitation the report itself, any annexes, photographs[,] and notes relating to the report.

10. All [d]ocuments constituting communications (i.e., emails, correspondence[,] and text messages) involving the [s]eller relating to the report by Paul Marchand detailing the condition of the purchased goods at the time of the delivery, including without limitation the report itself[,] any annexes, photographs[,] and notes relating to the report.

11. All [d]ocuments relating to the basis for Mr. Vanhoorickx's representation . . . that all of the products were "still wrapped/boxed (so can easily be put in containers) . . . ."

12. All [d]ocuments relating to the basis for the decision to terminate the warehouse manager in Arles responsible for storing the purchased goods.

13. All [d]ocuments relating to the basis for Mr. Vanhoorickx's representation to Henry Dana that the damages rate for the warehouse had declined.

(#1-2 at 9–11.)

[10] Valitus' proposed Rule 30(b)(6) topics concern the same information Valitus seeks in its document requests. *See* #1-2 at 5–6. The only additions – involving "[t]he nature, extent[,] and location of the [d]ocuments requested in the [s]ubpoena[,] . . . [t]he search performed by [BCH] for the [d]ocuments requested[,]" and "[t]he person or persons involved in negotiating the [s]ales contract" – primarily concern the documents themselves or Vanhoorickx, who is referenced extensively in the document requests. *Id.* at 5.

8

"Section 1782(a) provides that a federal district court 'may order' a person 'resid[ing]' or 'found' in the district to give testimony or produce documents 'for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person.'" *Intel Corp. v. Advanced Micro Device, Inc.*, 542 U.S. 241, 246 (2004) (quoting 28 U.S.C. § 1782(a)). "To obtain discovery under § 1782, a petitioner must first meet three statutory requirements": (1) there must be a discovery order "issued by '[t]he district court . . . of the district in which [the respondent] resides or is found'"; (2) "the discovery must be 'for use in a proceeding in a foreign or international tribunal'"; and (3) the application must be made by an "interested person." *Chevron Corp. v. Shefftz*, 754 F. Supp.2d 254, 260 (D. Mass. 2010) (quoting 28 U.S.C. § 1782(a)). The material being sought also must not be protected by "any legally applicable privilege." *Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*, No. 18-mc-91406-PBS, 2019 WL 3072197, at *2 (D. Mass. Jul. 15, 2019) (quoting § 1782(a), and *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018)). The party seeking discovery bears the burden of establishing that all of § 1782's statutory requirements are met. *In re Schlich*, 893 F.3d at 50.

"Even if [a] court is authorized to grant discovery under § 1782, it is not required to do so." *Chevron*, 754 F. Supp.2d at 260. Rather, "courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Schlich*, 893 F.3d at 46–47 (quoting *Intel*, 542 U.S. at 252). After a court determines that the requirements of § 1782 are met, it must evaluate the following discretionary factors: (1) "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'"; and (4) "whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." *Id.* at 47 (quoting *Intel*, 542 U.S. at 264–65). The First Circuit has noted that, unlike the statutory requirements, it does "not see the [*Intel*] factors as creating a burden for either party to meet, but rather as considerations to guide the . . . court's decision" about whether to allow discovery. *Id.* at 50 (internal quotation marks omitted).

    1. <u>Valitus' application meets all of the statutory requirements of §1782(a).</u>

       The parties do not dispute that Valitus has met each of § 1782's statutory requirements. *See* #22 at 5–6. BCH, as a Delaware limited liability company with a principal place of business located at 200 Clarendon Street, Boston, MA, 02116, resides within the District of Massachusetts for purposes of § 1782. *See* Secretary of the Commonwealth – Corporations Division, https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=J3AglvTBUKy LeH1wdW5QOEzfcj8r.jnOztNy511av2A- (last visited Oct. 27, 2020). Valitus, as the plaintiff in the Nantes proceeding, is "an interested person." *See Intel*, 542 U.S. at 256. Valitus' requests are "for use" in the foreign proceeding because they are clearly relevant to the issues of both liability and damages in the Nantes proceeding. *See In re Schlich*, 893 F.3d at 52. Finally, as far as is known, the documents Valitus seeks are not protected by "any legally applicable privilege."

    2. <u>On balance, the four discretionary *Intel* factors weigh in favor of granting Valitus' discovery requests.</u>

    a. <u>BCH is not a party to the Nantes proceeding, but some of the documents Valitus seeks may be within the Nantes court's jurisdictional reach.</u>

While Valitus argues that the first *Intel* factor weighs in favor of discovery because BCH is not a party to the Nantes proceeding (#16 at 14), BCH correctly points out that, because it is an affiliate of Bain UK and Bain Europe, and many of the documents Valitus seeks are in the possession of either Bain Europe or Bain UK in either Europe or the UK, Valitus, by issuing this subpoena, is attempting to obtain discovery of documents from its party-opponents. (#22 at 6–9.) Therefore, BCH argues, the first *Intel* factor weighs against discovery. *Id.* at 9.

The court finds BCH's argument regarding the first *Intel* factor persuasive. It is well-settled that, when the person from whom discovery is sought is a participant in the foreign proceeding, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when [the] evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. "Because the foreign tribunal has jurisdiction over those appearing before it, it can order them to produce evidence." *In re Porsche Automobil Holding SE*, No. 19-mc-91129-LTS, 2019 WL 5806913, at *6 (D. Mass. Nov. 6, 2019) (citing *Intel*, 542 U.S. at 264), *adopted by* 2020 WL 813710 (D. Mass. Feb. 19, 2020). "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* (quoting *Intel*, 542 U.S. at 264). The court has recently explained:

> Whether the target of the subpoena is a participant in the foreign action, however, is only one part of the inquiry, because the critical question is whether the information targeted is within the foreign tribunal's jurisdictional reach. *See Chevron*, 754 F. Supp.2d at 261 (first *Intel* factor weighed "heavily" in favor of granting discovery when the respondent resided outside foreign courts' jurisdiction and foreign courts therefore could not order the discovery petitioner sought in his § 1782 action); *In re Penner*, No. 17-cv-12136-IT, [2017 WL 5632658, at **2–3] (D. Mass. Nov. 22, 2017) (first *Intel* factor weighed in favor of petitioners when respondents appeared to be outside foreign court's jurisdiction); *In re Application of OOO Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 U.S. Dist. LEXIS 98610, at **14–15 (S.D.N.Y. Oct. 15, 2009) (first *Intel* factor weighed in favor of the respondent, although he himself was not a party to the foreign proceeding [and

outside the Dutch court's jurisdictional reach], because the "vast majority" of the petitioner's § 1782 application covered documents that were within the possession of the parties to the foreign proceeding).

*Id.* at *6.

Valitus concedes that it "is seeking the documents pursuant to [§] 1782 precisely because [Bain UK] and [Bain Europe] have not produced the documents" in the Nantes proceeding themselves. (#16 at 14–15.) Seeking documents that are in a party-opponent's possession in the foreign proceeding by way of § 1782 appears to be just the practice against which courts in this circuit, along with other circuits, have cautioned. *See, e.g.*, *Minis v. Thomson*, No. 14-91050-DJC, 2014 WL 1599947, at *5 n.6 (D. Mass. Apr. 18, 2014) (first *Intel* factor weighed in favor of discovery where, unlike here, respondents failed to argue that petitioner's discovery request was "really just an attempt to obtain discovery of documents in [foreign court] by way of [§ 1782] proceeding"); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (first factor weighed against discovery when, "for all intents and purposes[,] petitioners [were] seeking discovery from . . . their opponent in the [foreign] litigation"); *In re Application of OOO Promnefstroy*, 2009 U.S. Dist. LEXIS 98610, at **18–19;  *In re Porsche*, 2019 WL 5806913, at *7 (first *Intel* factor weighed in favor of discovery when the plaintiffs specifically told the German court that they did not have the documents petitioner sought).

b. The French courts appear to be receptive to discovery assistance from the United States, and the discovery Valitus seeks appears to be highly relevant in the Nantes proceeding.

Although the first *Intel* factor weighs against discovery, the remaining *Intel* factors weigh in favor of granting Valitus' motion to compel. Under the second *Intel* factor, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance." *Intel*, 542 U.S. at 264.

The French courts appear to be receptive to U.S. assistance. Valitus attaches a recent case from the Northern District of California, *In re Ex Parte Application of Mentor Graphics Corporation*, No. 16-mc-80037-HRL (N.D. Cal. Jan. 14, 2017), to its memorandum in support, and argues that "French courts are receptive to evidence obtained through discovery pursuant to [§] 1782." (#16 at 17.) In *Mentor*, the respondent, a resident of Northern California, sued the petitioner in France, and the petitioner sought various discovery and a deposition testimony from the respondent in Northern California pursuant to § 1782. (#16-5 at 1–2.) In holding that the second *Intel* factor weighed in favor of discovery and, ultimately, granting the majority of the petitioner's § 1782 application, the California court indicated that it was "not aware of any policy of the French courts making them unreceptive to assistance from United States federal courts." *Id.* at 4. Furthermore, in ruling on the respondent's objections to the petitioner's proposed U.S. discovery, "[t]he French court concluded that neither the Hague Convention nor the French rules of civil procedure prevented discovery in [the U.S.], provided that it was conducted in a lawful manner, and provided that the French court had the opportunity to assess any evidence obtained through such discovery at the appropriate time." *Id.* at 4–5; #17-2 at 10.

BCH counters that the French court ruling on the respondent's objections in *Mentor* is a "court of first-instance" without "any binding authority on other courts in France." (#22 at 11.) However, BCH does not point to any contrary authority suggesting that the French courts would not accept the discovery Valitus seeks. Indeed, Valitus' counsel notes in her declaration that "[n]o reported decision of a French court of equal or higher rank has rejected the use of evidence obtained in the United States pursuant to [§] 1782." (#17 at 4.)

The discovery Valitus seeks – representing "categories of documents regarding the negotiation, sale, packing, delivery, damage[,] and inspection of [the] goods" during its

approximately one-year relationship with Bain and Maisons – also appears to be highly relevant to the issues of both liability and damages in the Nantes proceeding. *See Schlich*, 893 F.3d at 52 (noting that courts may consider relevance under the second discretionary *Intel* factor). Without § 1782 aid, it would be highly unlikely that Valitus could obtain the documents it seeks to prosecute its breach of contract action.[11]

c. There is no evidence that Valitus' requests were made in bad faith.

BCH argues that the third *Intel* factor weighs against discovery because the documents at issue are located in France and the United Kingdom, and Valitus has "spurned" these nations' discovery procedures. (#22 at 9.)

The court finds BCH's arguments unpersuasive. "[T]he Supreme Court made clear in *Intel* that § 1782 does not impose a foreign discoverability requirement." *In re Porsche*, 2019 WL 5806913, at *8 (citing *Intel*, 542 U.S. at 253). The Supreme Court reasoned that "[a] foreign nation may limit discovery within its domain for reasons particular to its own legal practices, culture, or traditions – reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (citations omitted). "The requirement that a district court consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or the policies of a foreign country or the United States, . . . boils down to whether the

---

[11] According to the declaration made by counsel for Valitus in the Nantes proceeding, "[d]ocument production is limited" in France, and "each side submits to the opposing party the documents it relies on in its present case." (#17 at 2.) Unlike litigation in the United States, "in France, there is no obligation to produce documents to the opposing party that would be damaging to the producing party or that the producing party does not rely on to present its case." *Id.* Furthermore, if a litigant wants the opposing party to produce a particular document, he or she must identify it with specificity and "demonstrate that [it] will be evidence that has a direct impact on the case." *Id.* at 3; *see also* #22-2 at 2 (declaration of counsel for Bain and Maisons). Valitus cannot do this without knowing whether a specific document even exists.

discovery is being sought in bad faith." *In re Porsche*, 2019 WL 5806913, at *8 (internal citations and quotation marks omitted).

Despite the fact that Valitus is, admittedly, seeking the documents from BCH because it is unable to obtain them from its party-opponents under foreign procedures, there is no evidence that Valitus is acting in bad faith by thwarting those procedures. Rather, Valitus is entitled to seek what appears to be highly relevant discovery in order to prosecute its case and estimate its damages. *Compare Chevron*, 754 F. Supp.2d at 262 (internal citations and quotation marks omitted) (third *Intel* factor met when "[p]etitioner's request for discovery appear[ed] to be a good faith effort to elicit evidence that [had] probative value" in foreign proceedings), *In re Porsche*, 2019 WL 5806913, at *8 (third factor weighed in favor of discovery when defendants/petitioners "provided a legitimate reason for seeking discovery from" the respondents), *and In re Application of Pro-Sys Consultants*, No. 16-mc-91016-PBS, 2016 WL 4154306, at *2 (D. Mass. Aug. 5, 2015) (absent a clear statement from the foreign court, respondent failed to demonstrate that applicants were "engaged in an effort to thwart a prohibition on foreign depositions" under third *Intel* factor), *with In re Application of OOO Promnefstroy*, 2009 U.S. Dist. LEXIS 98610, at **23–27 (third factor weighed against discovery when petitioners acted in bad faith by invoking § 1782 after the Dutch courts had previously rejected similar requests); *see also* #16-5 at 4 (referencing *Mentor* decision and noting that "[t]hough depositions and requests for categories of documents are asserted to be unavailable in the French proceeding . . . , a party does not 'circumvent' foreign discovery procedures merely by pursuing material in the United States that would not be discoverable in the foreign proceeding").

Furthermore, as in the United States, the fact that a foreign court is presented with discovery does not mean that it needs to accept the evidence or deem it admissible. *See* #17-2 at 10; *Minis*, 2014 WL 1599947, at \*2.

      d.  <u>Valitus' subpoena for documents is not unduly burdensome or intrusive.</u>

Finally, the fourth *Intel* factor weighs in favor of discovery. "Section 1782 requires discovery orders to be 'in accordance with the Federal Rules of Civil Procedure' unless the court should order otherwise." *Sandra Holding*, 2019 WL 3072197, at \*4 (quoting 28 U.S.C. § 1782(a)). Rule 26 "limit[s] the scope of discovery to 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). The court that, "[i]n the § 1782 context, '[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information[,] and appear to be a broad fishing expedition of irrelevant information.'" *Id.* (quoting *In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp.3d 1029, 1043 (N.D. Cal. 2016)). A court may narrow a proposed discovery order if it finds that the petitioner's requests are not relevant to any party's claim or defense or proportional to the overall needs of the case. *Id.* at \*5.

The court agrees that Valitus' requests are not unduly intrusive or burdensome for the reasons Valitus provides in its memorandum in support. As a general matter, the Nantes proceeding is a relatively simple breach of contract action, involving a commercial sale of household goods, rather than a complex anti-trust action or patent case, and BCH does not contend that Valitus is requesting confidential information. *See* #16 at 19. Valitus' requests are "narrowly tailored" in that each of its thirteen proposed categories of documents relate to events that occurred over the course of only eleven months. *Id.* at 18. "Valitus had no reason to believe that the

requested information is voluminous, and it is patently obvious on the face of the subpoena that its purposes is not to intrude, only to bring relevant evidence to light." *Id.* at 19. Finally, BCH is a sophisticated company with "substantial experience in gathering and storing vast quantities of information . . . ." *Id.* at 19; *see Sandra Holding*, 2019 WL 3072197, at *5 (discovery "limited in scope to information regarding the alleged related-party transaction" was not unduly burdensome or intrusive); *In re Stati*, No. 15-mc-91059-LTS, 2018 WL 474999, at *7 (D. Mass. Jan. 18, 2018) (fourteen areas proposed areas of inquiry at deposition not unduly intrusive or burdensome).

BCH counters that, "in the event that [Valitus' subpoena is] enforced in any respect," its scope should still be substantially narrowed. (#22 at 12.) Specifically, BCH contends that, because the "responsive documents concern UK entities, UK and European Union laws may be triggered by BCH's effort to produce them." *Id.* at 12 (noting that the "General Data Protection regulation ('GDPR'), which provides for the protection of personal data, applies to data created by employees in the United Kingdom"). While the court is mindful of BCH's apprehensions,[12] it is not convinced that compliance would be unduly burdensome for an entity like BCH, which, according to Valitus' memorandum in support, "operates a highly sophisticated worldwide enterprise with assets under management of over $100 billion." (#16 at 19.) BCH's concerns may be alleviated if Valitus and BCH submit a proposed discovery order, detailing their compliance with the GDPR and agreed-upon procedures regarding costs and indemnification in the event of non-compliance. *See generally In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp.3d 243 (S.D.N.Y. 2018).

B. <u>Valitus is not entitled to a Rule 30(b)(6) deposition from a BCH representative.</u>

To the extent that Valitus seeks Rule 30(b)(6) deposition testimony, Valitus' motion is denied, without prejudice. "Once discovery is authorized under § 1782, the federal discovery rules

---

[12] The court will not further delve into the nuances of other nations' privacy protection laws.

. . . contain the relevant policies and procedures for the taking of testimony and the production of documents." *In re Porsche*, 2019 WL 5806913, at *11 (quoting *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007)). Rule 45 provides that a party issuing a subpoena to a non-party "is 'to avoid imposing undue burden or expense' on them." *Id.* (quoting Fed. R. Civ. P. 45(d)(1)). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" for discovery. *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1988)).

Because the majority of Valitus' proposed Rule 30(b)(6) deposition topics are covered by its document requests, and Valitus itself concedes that its deposition subpoena "seeks only information concerning the nature, extent[,] and existence of the documents listed" in its subpoena for documents (#16 at 10), the court finds that taking the deposition of a BCH representative would cause an undue burden at this juncture.

IV.  Conclusion.

For the above reasons, Valitus' motion to compel BCH to comply with its subpoena (#15) is granted to the extent that it seeks relevant document production from BCH and the parties certify compliance with the EU General Data Production Regulation. To the extent that Valitus seeks Rule 30(b)(6) deposition testimony, Valitus' motion is denied, without prejudice. Valitus and BCH shall confer, and no later than November 30, 2020, either agree on procedures regarding costs and indemnification in the event of non-compliance with the GDPR, or file a status report with the court setting out any further areas of disagreement.


November 2, 2020                                    /s/ M. Page Kelley
                                                   M. Page Kelley
                                                   Chief United States Magistrate Judge